(63 Misc. Rep. 479.)

## In re TERWILLIGER'S ESTATE.

### (Surrogate's Court, Dutchess County. May, 1909.)

MARRIAGE (§ 50*)—EVIDENCE—COMMON-LAW MARRIAGE.

A husband, after the death of his wife from whom he had been separated for several years, lived with another until his death. She had been his mistress during the lifetime of his wife. The testimony was clear that the woman was accepted among the neighbors and acquaintances as his wife, on his acknowledgment and representations. *Held*, that she was entitled to letters of administration on his estate as his common-law wife.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 79–89; Dec. Dig. § 50.*]

In the matter of the estate of Alonzo W. Terwilliger. Application to revoke the letters of administration granted.

Morschauser & Hoysradt, for petitioner.
George Wood, for administrators.
Dan J. Gleason, special guardian, for Leon Terwilliger.
Adelbert Haight, special guardian, for Iris Terwilliger.

HOPKINS, S. Decedent died at town of Red Hook, this county, April 2, 1909. On April 6, 1909, letters of administration upon his estate were granted by this court to his daughter Hattie Moore and John L. Teats, upon the daughter's application, founded upon a petition stating that she and one Leon Terwilliger, an infant grandson of deceased, were his only heirs at law and next of kin. Subsequently, and on April 9, 1909, a petition was filed in this court by Letitia Terwilliger, in which she alleged that she was the widow of deceased, and that one Iris Terwilliger, a minor, was a son and heir at law of deceased and entitled to a distributive share of his estate with the above-named daughter and grandson, and praying that the letters of administration issued to Hattie Moore and John L. Teats be revoked, and that letters of administration be issued to said Letitia Terwilliger as widow of deceased. A special guardian was appointed for each of said infants, who duly appeared but filed no objections. The administrators filed an answer to said petition, in which they denied that Letitia Terwilliger was the widow of decedent, or that she was married to him, or that she had any interest in said estate. Upon the issue thus joined both parties produced considerable testimony bearing upon the relations of the deceased to the person claiming to be his widow; but, before considering the evidence, it

is well to briefly consider the rules of law uniformly applied in disposing of similar questions.

In Tracy v. Frey, 95 App. Div. 579, 88 N. Y. Supp. 874, in which the leading cases upon marriage and legitimacy of children are cited and discussed, the court says:

"In the absence of proof the presumption is of marriage arising out of cohabitation in the apparent relation of husband and wife, of the innocent and lawful character of such relationship, and of the legitimacy of children which are the fruit of such union, and in no branch of the law is the presumptive rule more rigidly enforced. Even where the relation in its inception was meretricious, and although there was no proof of any ceremonial marriage or other contract of marriage thereafter, yet, as the parties continued to cohabit together, and certain declarations made, * * * it was held that a presumption of marriage subsequent to the commencement of the illicit relation would be presumed, and that a finding of a subsequent contract of marriage between the parties would be upheld, although there was no direct proof establishing the same. Also, where it is admitted that the cohabitation of the parties is illicit in its origin, the presumption is that it so continues, and before it can be characterized as a lawful relation proof is required of such acts and circumstances as indicate that the relation has ceased to be illicit and become matrimonial."

The case above cited quotes Judge Vann, in Gall v. Gall, 114 N. Y. 109, 21 N. E. 106, as saying upon this subject:

"It is sufficient if the acts and declarations of the parties, their reputation as married people, and the circumstances surrounding them in their daily lives, naturally lead to the conclusion that, although they began to live together as man and mistress, they finally agreed to live together as husband and wife."

Applying the rule above quoted to the case before me, what is the logical conclusion from the evidence adduced?

It is undisputed that the relation between the petitioner and decedent was meretricious in its inception. Terwilliger had been married several years to one Mary Moore, lived with her, and had children by her. They resided on a small place owned by Terwilliger near the village of Madalin. In 1892 they mutually agreed in writing to live separate and apart, and Terwilliger left his home and commenced living openly with Letitia Minkler. In 1894 the child Iris was born, the offspring of Alonzo and Letitia. In 1895 Mary, the lawful wife, died. Alonzo and Letitia then moved upon his place and continued to live there together until his death. During all these years she was true and faithful to him. Many witnesses were called on each side to testify as to the acts and declarations of the parties. All the testimony that was adduced showed that they lived there as man and wife. They held themselves out and were generally reputed in the neighborhood to be husband and wife, and many witnesses testified to the fact of his addressing and speaking of her as his wife, on many occasions, since 1895 down to the time of his death. The evidence of cohabitation and repute, it seems to me, is most satisfactory and complete. Therefore their reputation as married people, their acts and declarations, and the circumstances surrounding them in their daily lives, naturally lead to the conclusion that, although they began to live together as man and mistress, they finally agreed to live together as husband and wife. Before the death of the wife, Mary, no contract could exist; but, when that occurred, a change in

the character of relation of these people could have taken place, and, I believe, did take place, from illicit to matrimonial. No better or more conclusive evidence, indicating a purpose thenceforth to make their relations matrimonial, can well be conceived than the documentary evidence introduced by the petitioner in the form of an attempted testamentary disposition of his property by decedent and a paper purporting to be the family record, both proven to be in his handwriting. In the paper writing, signed by decedent, which he designates as his last will and testament, and which remained unexecuted, and which was prepared within a year previous to his death, he uses the following language:

"First, I give and bequeath to my wife Letitia the use of property which I possess * * * after her death, then shall my son Iris Terwilliger take full possession," etc., "as his father's desire."

And in the family record he wrote:

"Alonzo W. married Mary Moore, Letitia Minkler."

These two documents, to my mind, point clearly to the conclusion that decedent considered Letitia his wife and Iris his lawful son, and desired the world to so understand and consider their relations as man and wife from the time of the death of the wife Mary. Though no ceremonial marriage has been claimed or established, I find here all the requisites to constitute a valid marriage between them, for the proof shows actual cohabitation as husband and wife, acknowledgments, declarations (verbal and written), conduct, repute, and reception among neighbors. The present administrators lay great stress upon the testimony given by their witnesses to the effect that Letitia had said, a short time previous to the death of Alonzo, that "they were not married, and that she requested some of them to intercede and have a ceremony performed," claiming that this precludes the idea of any contract of marriage between the parties. I do not so view it. Assuming the testimony to be true, she only said and did what she thought necessary to be done, before Alonzo died, in order to make their union legal, not knowing and not being informed that their common-law marriage, entered into prior to January 1, 1902, was just as legal and binding as though a civil or religious ceremony had been performed.

My conclusion therefore is that Letitia was the lawful wife of Alonzo W. Terwilliger and his widow, and entitled to administer upon his estate, and Iris his legitimate son, and that an order be entered removing Hattie Moore and John L. Teats as administrators, and revoking their letters, and appointing Letitia Terwilliger administratrix upon her duly qualifying as such.

Decreed accordingly.